FILED BY CG D.C.
05 JUL 29 PM 3:49
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. 04-20017 D/V

RANDE LAZAR, M.D., d/b/a
OTOLARYNGOLOGY CONSULTANTS
OF MEMPHIS

Defendant.

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS AND EXCLUDE ALL RECORDS SUBPOENAED PURSUANT TO DOJ HEALTH CARE SUBPOENAS (Doc. No. 202)

Before the court is the November 23, 2004 motion of the defendant, Rande Lazar, M.D., d/b/a Otolaryngology Consultants of Memphis, to suppress all records subpoenaed post-indictment pursuant to 18 U.S.C. § 3486 Department of Justice health care subpoenas. The motion was referred to the United States Magistrate Judge for a report and recommendation. For the following reasons, it is recommended that the motion be granted.

## BACKGROUND

In January of 2004, the grand jury for the Western District of Tennessee returned a 115-count indictment charging Dr. Lazar with devising and executing a scheme to defraud and obtain money from health care benefit programs in violation of 18 U.S.C. § 1347. A

This document entered on the docket sheet in compliance
with Rule 55 and/or 32(b) FRCrP on 8-1-05



120-count superseding indictment was returned by the grand jury on November 19, 2004.

Subsequent to the original indictment in this case and before the superseding indictment, the government issued Department of Justice health care subpoenas pursuant to 18 U.S.C. § 3486 to obtain records relating to Dr. Lazar and his business, Otolaryngology Consultants of Memphis. The subpoenas, which have since been filed under seal by the government, sought Lazar's account activity information from several banks, certification and academic records for Lazar, records related to the hospital privileges of Lazar, and records from various insurance companies regarding Lazar's billing practices.

On August 27, 2004, Lazar filed a motion to suppress only the hospital records subpoenaed post-indictment pursuant to 18 U.S.C. § 3486. The present motion is in addition to the August 27, 2005 motion and requests suppression of *all* records seized pursuant to DOJ health care subpoenas on different grounds. This motion was originally granted because the government failed to respond to the motion in the time allowed by Local Criminal Rule 12.1. The government filed a motion to reconsider that ruling, and the court granted its request. The government filed a response to the motion on January 6, 2005. Lazar appealed the court's ruling to reconsider, and Judge Donald affirmed the magistrate judge's order

granting the government's request to reconsider on April 13, 2005.

A hearing was held on this motion on May 25, 2005. Although it was set for an evidentiary hearing, no witnesses were presented. The court took the motion under advisement and allowed the government additional time to file a brief explaining the legislative history of 18 U.S.C § 3486. The government filed its brief on June 13, 2005. The court also requested that the government submit the DOJ subpoenas for an *in camera* review. The subpoenas were filed under seal on June 23, 2005.

PROPOSED CONCLUSIONS OF LAW

The first issue is whether Lazar has standing to challenge subpoenas directed towards third parties. If the court finds Lazar has standing, the court must then determine whether 18 U.S.C. § 3486 conforms with the mandates of the Fifth Amendment of United States Constitution.

I. Standing to Move for Suppression of Records From Hospitals

The government cites *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993) as authority for the proposition that a defendant has no standing to contest on Fourth Amendment grounds administrative subpoenas issued to third parties unless the party can show some personal right or expectation of privacy attached to

the subpoenaed materials.[1] *Phibbs* involved a defendant, Rojas, who was convicted of participating in a cocaine ring. Rojas was originally indicted in May of 1990 in a single-count, sealed indictment. A 13-count superseding indictment was returned against Rojas in March of 1991. After the return of the original indictment and before the superseding indictment was returned, the government issued DEA administrative subpoenas under the authority of 21 U.S.C. § 876(a) for Rojas' telephone records and those of his co-defendants and for Rojas' credit card statements. Rojas contended that records subpoenaed from the telephone company were an abuse of subpoena power.

The court stated that although recipients of administrative subpoenas were extended Fourth Amendment protections, Rojas did not have standing to dispute the issuance of the subpoenas since they were directed to third party businesses unless Rojas had "a legitimate expectation of privacy attaching to the records obtained." *Phibbs*, 99 F.2d at 1077. The court determined that Rojas did not have a legitimate expectation of privacy in any of

---

1. Despite the fact that Lazar is seeking to suppress all records obtained pursuant to DOJ subpoenas, the government only contends in its response to this motion that Lazar does not have standing to challenge the health care subpoenas issued to the hospitals. Therefore, the court assumes that the government does not contest Lazar's standing to challenge the subpoenas issued to the banks, universities, insurance companies, and other institutions.

the materials, including his phone records and credit card statements, because the subpoenaed records contained information "readily accessible to employees during the normal course of business". *Id.* at 1078. The court held therefore that Rojas lacked standing to challenge the government's use of DEA subpoenas post-indictment. *See also United States v. Daniels*, 2000 WL 764951(D. Kan. 2000)(holding defendant lacked standing to challenge DOJ post-indictment health care subpoenas issued under 18 U.S.C. § 3486 without explaining the nature of the records sought); *United States v. Moffett*, 84 F.3d 1291 (10th Cir. 1996)(holding defendant lacked standing to challenge pre-indictment DEA administrative subpoena issued under 21 U.S.C. § 876(a) for train manifest - a business record of Amtrack - because defendant had no expectation of privacy in the information).

The present case differs from *Phibbs*. Unlike the telephone and credit card records subpoenaed in *Phibbs*, the hospital records at issue here were not "readily accessible to employees during the normal course of business." The records sought by the DOJ subpoenas from hospitals in this case were generated by the hospitals pursuant to medical peer review committee proceedings. The Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219(e), provides that all information, reports, statements, memoranda or other data furnished to or generated by a medical peer

review committee, and any findings, conclusions or recommendations resulting from the proceedings of such committee are privileged and confidential. The purpose of Tennessee's Peer Review Law is to candidly and objectively evaluate and review a physician's professional conduct, competence, and ability to practice medicine. Tenn. Code Ann. §63-6-219(b)(1). It goes without saying that confidentially of peer review committee proceedings is important to the process. *Id.* The Tennessee Peer Statute recognizes "that confidentiality is essential both to effective functioning of these peer review committees and to continued improvement in the care and treatment of patients." *Id.* The statute further states "[T]he records and proceedings of any such committees are confidential and shall be used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings." Tenn. Code Ann. § 63-6-219(e). According to the statute, the records can be disclosed to the affected physician under review without waiving the confidentiality of the records.

A legitimate expectation of privacy is "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Because by statute the peer review committee records are to be kept confidential but

still available to the affected physician, Lazar has an expectation of privacy in the records sought by the subpoenas that society would recognize as reasonable. Thus, Lazar has standing to challenge the validity of the DOJ subpoenas issued to the hospitals based on the fact that discussions between him and the hospital and records concerning his reinstatement were, and remain, highly confidential. The fact that there is no peer review privilege in federal court does not foreclose Lazar from having an expectation of privacy in conversations and/or meetings he had with the hospital concerning his reinstatement or records of the proceedings nor does it make the records non-confidential. Accordingly, Lazar has a legitimate expectation of privacy in the subpoenaed records sufficient to confer standing to challenge the validity of the DOJ subpoenas.

II. Constitutionality of Administrative Health Care Subpoenas

Lazar contends that because DOJ subpoenas are to be used only in criminal investigations, their use by the prosecution to obtain over 20,000 documents post-indictment intrudes on the exclusive province of the grand jury under the Fifth Amendment, thus making § 3486 unconstitutional.[2] Section 3486 authorizes the Attorney

---

1. Lazar also initially argued that by using a Department of Justice administrative subpoena to obtain criminal evidence, the prosecution failed to conform to the Fourth Amendment's probable cause requirements. This argument has been withdrawn as Lazar

General to issue in writing an administrative subpoena requesting the production of any records relevant to "any investigation of a Federal health care offense." It states:

> § 3486. Administrative subpoenas
> (a) Authorization.
> (1) In any investigation of -
> (i)(I) A Federal health care offense . . . , the Attorney General . . . may issue in writing and cause to be served a subpoena requiring the production and testimony describe in subparagraph (B).

18 U.S.C. § 3486. The term "federal health care offense" is defined in 18 U.S.C. § 24 as a violation of, or a criminal conspiracy to violate, 18 U.S.C. § 669 (theft or embezzlement from a health care benefit program), § 1035 (making false statements in relation to delivery of or payment for health care benefits), §1347 (fraud on a health care benefit program) or § 1518 (obstruction of criminal investigation of health care offenses). 18 U.S.C. § 24. Lazar has been charged with violations of 18 U.S.C. § 1347.

This statute gives the federal government's chief prosecutor

---

acknowledged through a notice of additional authority that the case law cited by him, *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993) was not controlling on the issue presented in his motion. Instead, in a more recent case, *Doe v. United States*, 253 F.3d 256 (6th Cir. 2001), the Sixth Circuit held that the DOJ need not make a showing of probable cause to issue an administrative subpoena under 18 U.S.C § 3486. The *Phibbs* case is distinguishable because it involved an on-premise search and inspection. Where an on-premise search is involved pursuant to an administrative subpoena, unlike the subpoenas at issue in this motion, a valid search warrant and a showing of probable cause are needed.

broad investigatory subpoena powers. Pursuant to the plain language of the statute, these powers may only be used in furtherance of investigating criminal health care offenses as opposed to regulatory compliance or both civil regulatory matters and criminal matters. *In re Subpoenas Duces Tecum*, 51 F.Supp.2d 726, 735 (W.D.Va. 1999). Indeed, the Congressional Record indicates that Congress intended to enhance the investigatory tools of the United States in criminal health care fraud investigations. *See* 142 CONG. REC. S9501-01 (daily ed. Aug. 2, 1996)(statement of Senator Cohen).

The Fifth Amendment of the United States Constitution guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." "[T]he grand jury's mission is . . . to determine whether to make a presentment or return an indictment." *United States v. Mandujano*, 425 U.S. 563, 573 (1976).

Lazar's main contention is that § 3486 is unconstitutional because it allows the government to exercise authority constitutionally reserved for the Grand Jury under the Fifth Amendment. By availing itself post-indictment of the DOJ administrative subpoenas to secure evidence in a criminal prosecution, Lazar claims that the government is circumventing the role of the Grand Jury. Lazar maintains that by allowing the DOJ

to compel the production of criminal evidence post-indictment through the use of an administrative subpoena, Congress has interfered with the Grand Jury's power to investigate. Thus, Lazar claims that the government has violated his Fifth Amendment rights.

Lazar cites *United States v. Weingarden*, 473 F.2d 454 (6th Cir. 1973) to support his contention that § 3486 is unconstitutional. In *Weingarden*, the government audited taxpayers' returns after they reported a theft of their savings bonds. An Internal Revenue Agent issued a summons to the taxpayers' accountant pursuant to 26 U.S.C. § 7602 for the production of copies of the taxpayers' tax returns. The accountant referred the agent to the attorney for the taxpayers who refused to comply with the summons. The agent then filed an action against the attorney to enforce the summons. The district court denied the action and quashed the summons.

On appeal, the government asserted that the summons should be enforced because at the time it was issued there was no recommendation to the Department of Justice that the taxpayers be prosecuted. Nevertheless, the attorney argued that the summons should be quashed because its sole purpose was to obtain evidence for a criminal prosecution. The court reversed the judgment and remanded the case for enforcement of the summons. Despite the fact that the taxpayers were recommended for prosecution subsequent to

the issuance of the summons, the court held that the summons should be enforced because the summons was issued for the purpose of the government's determination of civil tax liability and possible fraud penalties.

The court further held that after a tax violation has been referred to the DOJ for criminal prosecution, the DOJ cannot ask the IRS to use its § 7602 summons power to build a case for it. To permit the DOJ to use § 7602 for documents in which to build its case would be an abuse of the court's process and authority. Likewise, "where the sole purpose for the issuance of a § 7602 summons is to aid in the prosecution of a taxpayer (even though issued by an agent of the Internal Revenue Service) the effect is that it is the Department of Justice which is in reality using the summons." *Id.* at 459. By quashing the summons in *Weingarden*, the court effectively prohibited the DOJ from using IRS summonses to gather criminal litigation discovery.

Lazar cites footnote nine in *Weingarden* for the proposition that the Grand Jury's role precludes the DOJ, in its role as prosecutor, from using its own administrative subpoena power to gather evidence for a pending criminal prosecution. Footnote nine states in its entirety:

> The reason that broad subpoena powers were given to the administrative agency and not to the prosecutorial

> department lies in our Grand Jury system. Broad investigatory, inquisitory and subpoena powers were given to that body of citizens drawn from the community; like powers were not intended to be in the hands of the prosecutors of crime. See, *e.g.*, *Fraser v. United States*, 452 F.2d 616 (7th Cir. 1971), where the Court held that the Fourth Amendment was not applicable to a "seizure" of documents by the Grand Jury, although clearly it would be applicable if the Government attempted such a seizure. On the other hand, an administrative investigation and subpoena is given broad latitude in many respects similar to the latitude of a Grand Jury investigation and subpoena. (citations omitted).

*United States v. Weingarden*, 473 F.2d 454, 459 n.9 (6th Cir. 1973). Lazar thus contends that the authority given to the DOJ to issue administrative subpoenas pursuant to § 3486 is in direct conflict with the Fifth Amendment's Grand Jury Clause as the power to investigate criminal violations was intended to remain in the hands of the Grand Jury.

To further support his motion, Lazar cites *United States v. O'Conner*, 118 F.Supp. 248 (D.Mass. 1953). Like *Weingarden*, *O'Conner* also dealt with a summons issued under the authority of the Internal Revenue Code. The opponent of the subpoena, O'Conner, was the accountant for a man that had been indicted by the grand jury. O'Conner sought to quash the subpoena for documents in his possession that had been issued under the authority of § 3614 of the Internal Revenue Code. He argued that the court "ought not lend its aid in enforcing compliance with a subpoena

administratively issued by a Treasury official to aid the United States Attorney, or Department of Justice" in building a case against the man that had been indicted. *O'Conner*, 118 F.Supp. at 250. The court agreed with O'Conner and denied the petition to enforce the subpoena.

The court commented on the role of the Grand Jury by stating:

> The Constitution of the United States, the statutes, the traditions of our law, the deep rooted preferences of our people speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure. That is the inquisitorial body provided by our fundamental law to subpoena documents required in advance of a criminal trial, and in the preparation of an indictment or its particularization.

*Id.* at 250-51. The court further noted, "To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of criminal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction perversion of a statutory power." *Id.* at 251. The court also stated that "[s]o far as [it] knows, Congress has never in criminal matters vested the executive with an unrestricted subpoena power to uncover information which might aid in enforcement of criminal statutes and the preparation of criminal cases." *Id.* at 250.

The United States Supreme Court has also spoken on the issue of whether the DOJ may use subpoena power to discover evidence in

a criminal investigation. *United States v. LaSalle Nat. Bank*, 437 U.S. 298 (1978). In *LaSalle*, an Internal Revenue Service agent issued two summonses under 26 U.S.C. § 7602 to LaSalle National Bank. LaSalle refused to produce the materials requested because it argued that the IRS investigation was purely criminal in nature. The IRS sought enforcement of the summonses. The trial court denied enforcement on the ground that the IRS did not issue the summons in good faith because the summons was issued solely to obtain evidence for use in a criminal prosecution. The appellate court affirmed.

The Supreme Court granted certiorari to determine whether the lower court correctly refused to enforce the IRS summonses when it found that IRS agent was conducting his investigation for the purpose of securing evidence of criminal conduct. The Court held that the trial court erred in refusing to enforce the summons. The court reasoned that because Congress created a tax enforcement system with interrelated criminal and civil elements in enacting 26 U.S.C. § 7602, it did not intend for IRS subpoena power to be limited merely because of the presence of a criminal violation. In other words, simply because the agent was investigating the taxpayers for criminal conduct did not necessity mean that the IRS was not pursuing its statutorily authorized purpose of a civil tax determination. As long as the IRS issued its summons before

referral for criminal prosecution, the IRS summons was enforceable if it was issued in good faith. The court found no evidence of bad faith.

The Court's discussion regarding the use of an administrative summons did not end there, however. The Court went on to discuss the limitations on the use of a § 7602 summons and the policy concerns that arise at the time when a case is referred for criminal prosecution to the Judicial Department. The Court stated that:

> Nothing in § 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation. The likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post-referral use of summons authority were permitted.

*Id.* at 312. The Court further stated that:

> We cannot deny that the potential for expanding the criminal discovery rights of the Justice Department or for usurping the role of the grand jury exists at the point of the recommendation by the special agent.

*Id.* at n.15. Based on these statements, it is clear that the Court was not willing to bestow upon the Department of Justice the same investigatory powers traditionally reserved for the Grand Jury.

In response to Lazar's motion, the government contends that

*Weingarden* does not support the notion that § 3486 is unconstitutional and that Lazar's citation to and quoting from *Weingarden* are misleading. According to the government, footnote nine, which was only cited in part by Lazar, addresses only the Fourth Amendment, not the Fifth Amendment. Furthermore, the government argues that *Weingarden* only addressed the narrow issue where subpoena power was specifically given to the Internal Revenue Service and not to the DOJ.

This appears to be a case of first impression. Neither party has presented to the court any controlling case law which squarely addresses the issue of whether 18 U.S.C. § 3486 is unconstitutional and thus violates the grand jury clause of the Fifth Amendment. In the cases cited by the defendant and discussed above, Congress had vested administrative subpoena power in the IRS to investigate both civil and criminal tax liability. Under 18 U.S.C. § 3486, however, unlike the IRS summons and as the government has correctly stated, Congress has explicitly granted the DOJ the authority to issue subpoenas for only criminal investigations, not civil, without any limitation.

Although the cases cited by Lazar are distinguishable from the present case in some respect, the policy considerations articulated by the Supreme Court in *United States v. LaSalle Nat. Bank* apply

with the same force. In *LaSalle*, the Supreme Court recognized the "likelihood that discovery would be broadened or the role of the grand jury infringed" if the IRS agents were permitted to use their subpoena powers after a referral for criminal prosecution is made to the Justice Department. *LaSalle*, 437 U.S. at 312. The Court felt that there was potential for abuse if the criminal discovery rights of the DOJ were expanded or the DOJ was allowed to usurp the role of the Grand Jury. Although *Weingarden* was decided prior to the Court's opinion in *LaSalle*, the Sixth Circuit recognized the same policy concerns in *Weingarden* that the Supreme Court enunciated in *LaSalle*, making clear that broad investigatory powers were not intended by the framers of our Constitution to be in the hands of prosecutors, but rather, these powers were given exclusively to the Grand Jury.

Section 3486 does the very thing that the Supreme Court feared. It broadens the discovery rights of the Justice Department in criminal prosecutions. As written, the statute allows the DOJ to continue to use its healthcare summons authority to aid in its prosecution of an already indicted defendant under the guise of "investigating" new charges. The potential for abuse lies in the fact that there is no way to prove or disprove the pretense that the government is using this subpoena power to "investigate" further criminal violations. Moreover, there is nothing in the

legislative history that indicates that Congress intended to broaden the DOJ's criminal *litigation* discovery tools. That is precisely what this statute does.

Without the proper limitation, the court finds that this statute is unconstitutional in that it takes what is an exclusive investigatory right of the Grand Jury and places it in the hands of the Justice Department. A finding that this statute is unconstitutional does not affect the DOJ's ability to prosecute criminal violations. It merely means that the government must seek Grand Jury subpoenas post-indictment to secure evidence during an investigation of criminal violations. This finding does, however, protect a defendant from the government's potential misuse of the criminal discovery process by obtaining litigation discovery under the pretext of a continuing "investigation." Accordingly, it is recommended that the defendant's motion to suppress and exclude all records subpoenaed pursuant to DOJ health care subpoenas be granted.

Respectfully submitted this 29th day of July, 2005.

Diane K. Vescovo

DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 359 in case 2:04-CR-20017 was distributed by fax, mail, or direct printing on August 1, 2005 to the parties listed.

---

Kevin P. Whitmore
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Cam Towers Jones
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Marc N. Garber
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd., NE
Ste. 14
Marietta, GA 30068

Stephen Farese
FARESE FARESE FARESE, PA
122 Church Street
P.O. Box 98
Ashland, MS 38603

Peter M. Coughlan
OFFICE OF THE ATTORNEY GENERAL
425 Fifth Ave., N.
Nashville, TN 37243--049

Honorable Bernice Donald
US DISTRICT COURT