IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___
05 JUL 29 PM 3:

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W.D. OF TN, MEMPHIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.   04-20017 D/V |
| RANDE LAZAR, M.D., d/b/a OTOLARYNGOLOGY CONSULTANTS OF MEMPHIS | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS ALL RECORDS ILLEGALLY SUBPOENAED POST-INDICTMENT FROM HOSPITALS

Before the court is the August 27, 2004 motion of the defendant, Rande Lazar, M.D., d/b/a Otolaryngology Consultants of Memphis, to suppress all records subpoenaed post-indictment from local Memphis hospitals pursuant to 18 U.S.C. § 3486. The motion was referred to the United States Magistrate Judge for a report and recommendation. A hearing was held on this motion on May 25, 2005. Although it was set for an evidentiary hearing, no witnesses were presented. For the following reasons, it is recommended that the motion be granted.

### FACTUAL BACKGROUND

In January of 2004, the grand jury for the Western District of Tennessee returned a 115-count indictment charging Dr. Lazar with devising and executing a scheme to defraud and obtain money from

This document entered on the docket sheet in compliance with Rule 55 and/or 32(b) FRCrP on _8-1-05_


360

health care benefit programs in violation of 18 U.S.C. § 1347. A 120-count superseding indictment was returned by the grand jury on November 19, 2004.

At the time of his indictment, Dr. Lazar had privileges to practice at Methodist Hospital, LeBohneur Children's Medical Center, St. Francis Hospital, and Baptist Memorial Hospital in Memphis, Tennessee. (Ex. 5, Mem. in Supp. of Mot of Baptist Mem. Healthcare Corp. for an Order Quashing Subpoena at 1-2, In re Dept. of Justice Subpoena Duces Tecum, No. 04-MC-018DV, Western District of Tennessee, June 8, 2004). After the indictment was returned, one hospital in particular, Baptist, suspended Dr. Lazar's privileges. (*Id.* at 2.) Baptist then convened a Medical Staff Executive Committee inquiry to conduct a physician peer review. (*Id.*) Dr. Lazar appeared and addressed the committee. (*Id.*) Thereafter, Baptist restored Dr. Lazar's privileges subject to certain conditions and restrictions. (*Id.*)

Subsequent to the original indictment in this case and before the superseding indictment, the government, upon learning that Dr. Lazar made certain representations to the peer review committee, served local hospitals with Department of Justice administrative subpoenas under the authority of 18 U.S.C. § 3486 in an effort to obtain records related to the hospital privileges of Dr. Lazar. (Ex. 5, Govt.'s Resp. to Mot of Baptist Mem. Healthcare Corp. for

an Order Quashing Subpoena at 1, In re Dept. of Justice Subpoena
Duces Tecum, No. 04-MC-018DV, Western District of Tennessee, June
8, 2004.)   On April 20, 2004, the government issued a subpoena
duces tecum to the custodian of records for Baptist seeking "all
records (unredacted) of each and every meeting, gathering,
assembly, and discussion regarding Dr. Rande Lazar's privileges at
the hospital(s)." (*Id.*, Mot. of Baptist, Ex. 1.) The subpoena
defined records as "all transcripts, recordings, documents, files,
minutes, e-mail, handouts, mailings, contracts, agreements, and
correspondence." (*Id.*) The government subsequently modified the
subpoenas and limited its request to: (1) documents related to
statements and representations made by Lazar, his counsel or other
representatives during all physician peer review meetings conducted
by the hospital; (2) documents, reports and handouts relied on by
Lazar to support his position for reinstatement; and (3) reports,
records, opinions, and documents, provided by others for
consideration by the peer review committee.

At the time Lazar filed this motion to suppress the subpoenaed
hospital records, he was unaware of the type of subpoenas issued by
the government.  His motion was based on knowledge obtained solely
through the government's filings with the court which acknowledged
they had received subpoenaed material.  Unaware of the nature of
the subpoenaed material or the government's authority for issuance

of the subpoenas, Lazar's motion to suppress was based on the assumption that the government used either trial subpoenas pursuant to Federal Rule of Criminal Procedure 17(c), which requires a court order for *ex parte* access to trial subpoena materials, or alternatively, a grand jury subpoena to gather evidence post-indictment.

The government's response to the present motion clarified that the contested subpoenas were Department of Justice ("DOJ") administrative subpoenas issued under the authority of Title 18 U.S.C. § 3486(a)(1)(A), and not trial or grand jury subpoenas. Therefore, Rule 17(c) does not apply, nor does case law forbidding the use of grand jury subpoenas to gather post-indictment evidence.

In his reply brief, Lazar concedes that his assumption that the government had used trial or grand jury subpoenas was incorrect. Nevertheless, Lazar contends that the government's use of DOJ health care administrative subpoenas under 18 U.S.C. § 3486 to obtain trial evidence was improper because the subpoenas exceeded the authority granted by section 3486, they were not based on probable cause, and the use thereof violates Lazar's right to due process and a fair trial under the Fifth and Sixth Amendments.

The government insists that Lazar lacks standing to challenge the validity of the subpoenas issued to the hospitals because the subpoenas were issued to third parties and Lazar lacks any

4

legitimate expectation of privacy in the hospital records. Lazar contests the government's assertion that he lacks standing to challenge the administrative subpoenas.

<u>PROPOSED CONCLUSIONS OF LAW</u>

The first issue is whether Lazar has standing to challenge subpoenas directed towards the third-party hospitals. If the court finds Lazar has standing, then the court must determine whether the government's post-indictment use of DOJ health care administrative subpoenas under 18 U.S.C. § 3486 exceeds the authority granted by § 3486.

I.   <u>Standing to Move for Suppression of Records From Hospitals</u>

The government cites *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993) as authority for the proposition that a defendant has no standing to contest on Fourth Amendment grounds administrative subpoenas issued to third parties unless the party can show some personal right or expectation of privacy attached to the subpoenaed materials. *Phibbs* involved a defendant, Rojas, who was convicted of participating in a cocaine ring. Rojas was originally indicted in May of 1990 in a single-count, sealed indictment. A 13-count superseding indictment was returned against Rojas in March of 1991. After the return of the original indictment and before the superseding indictment was returned, the government issued DEA administrative subpoenas under the authority

5

of 21 U.S.C. § 876(a) for Rojas' telephone records and those of his co-defendants and for Rojas' credit card statements.   Rojas contended that records subpoenaed from the telephone company were an abuse of subpoena power.

The court stated that although recipients of administrative subpoenas were extended Fourth Amendment protection, Rojas did not have standing to dispute the issuance of the subpoenas since they were directed to third party businesses unless Rojas had "a legitimate expectation of privacy attaching to the records obtained." *Phibbs*, 99 F.2d at 1077.   The court determined that Rojas did not have a legitimate expectation of privacy in any of the materials, including his phone records and credit card statements, because the subpoenaed records contained information "readily accessible to employees during the normal course of business". *Id.* at 1078.   The court held therefore that Rojas lacked standing to challenge the government's use of DEA subpoenas post-indictment. *See also United States v. Daniels*, 2000 WL 764951(D. Kan. 2000)(holding defendant lacked standing to challenge DOJ post-indictment health care subpoenas issued under 18 U.S.C. § 3486 without explaining the nature of the records sought); *United States v. Moffett*, 84 F.3d 1291 (10th Cir. 1996)(holding defendant lacked standing to challenge pre-indictment DEA administrative subpoena issued under 21 U.S.C. § 876(a) for train manifest - a

business record of Amtrack - because defendant had not expectation of privacy in the information).

The present case differs from *Phibbs*. Unlike the telephone and credit card records subpoenaed in *Phibbs*, the hospital records at issue here were not "readily accessible to employees during the normal course of business."  The  records sought by the DOJ subpoenas in this case were generated by the hospitals pursuant to medical peer review committee proceedings.  The Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219(e), provides that all information, reports, statements, memoranda or other data furnished to or generated by a medical peer review committee, and any findings, conclusions or recommendations resulting from the proceedings of such committee are privileged and confidential.  The purpose of Tennessee's Peer Review Law is to candidly and objectively evaluate and review a physician's professional conduct, competence, and ability to practice medicine.  Tenn. Code Ann. §63-6-219(b)(1).  It goes without saying that confidentially of peer review committee proceedings is important to the process. *Id*.  The Tennessee Peer Statute recognizes "that confidentiality is essential both to effective functioning of these peer review committees and to continued improvement in the care and treatment of patients." *Id*.  The statute further states "[T]he records and proceedings of any such committees are confidential and shall be

used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings." Tenn. Code Ann. § 63-6-219(e).   According to the statute, the records can be disclosed to the affected physician under review without waiving the confidentiality of the records.

A legitimate expectation of privacy is "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Because by statute the peer review committee records are to be kept confidential but still available to the affected physician, Lazar has an expectation of privacy in the records sought by the subpoenas that society would recognize as reasonable.   Thus, Lazar has standing to challenge the validity of the DOJ subpoenas based on the fact that discussions between him and the hospital and records concerning his reinstatement were, and remain, highly confidential.   The fact that there is no peer review privilege in federal court does not foreclose Lazar from having an expectation of privacy in conversations and/or meetings he had with the hospital concerning his reinstatement or records of the proceedings nor does it make the record non-confidential.  Accordingly, Lazar has a legitimate expectation of privacy in the subpoenaed records sufficient to confer standing to challenge the validity of the DOJ subpoenas.

Lazar also relies on the Sixth Circuit's decision in *In re Letter Rogatory from the Justice Court, District of Montreal, Canada,* 523 F.2d 562 (6th Cir. 1975) to support his standing to challenge the DOJ subpoenas issued to the third party hospitals. In that case, the government maintained that the appellant lacked standing to challenge a subpoena issued pursuant to 28 U.S.C. § 1782 to obtain records from a bank because the appellant had no proprietary interest in the records.  Section 1782 was enacted by Congress to provide judicial assistance for courts in other countries in furtherance of an investigation. The appellant alleged that the district court had exceeded the terms of the statute by issuing a subpoena in connection with a criminal investigation. The appellant sought to challenge the subpoena on the basis that § 1782 was not applicable to criminal prosecutions.   The Sixth Circuit rejected the government's argument that the appellant lacked standing, holding that "a party against whom the requested information is being used has standing to challenge the validity of a subpoena on the ground that it is in excess of the terms of the applicable statute." *Id.* at 563-64.

The facts of this case present a similar situation. The subpoenas that were issued by the Department of Justice in the present case are authorized by Congress under 18 U.S.C. § 3486. Like the appellant in *In re Letter Rogatory,* Lazar has alleged that

9

the government has exceeded its congressionally mandated statutory authority by using 18 U.S.C. § 3486 DOJ health care administrative subpoenas in lieu of Federal Rule of Criminal Procedure 17 subpoenas to prosecute a pending indictment. Specifically, Lazar is challenging the validity of the DOJ subpoenas on the ground that § 3486 does not authorize the government to use post-indictment subpoenas to obtain evidence to be used in a criminal trial but only to investigate health care offenses. Because Lazar is claiming that the DOJ exceeded its administrative subpoena authority granted by 18 U.S.C. § 3486 and the records are to be used against him, Lazar has standing to challenge the validity of the DOJ subpoenas to the hospitals under the authority of *Letters Rogatory*.

**II.   The Use of Administrative Health Care Subpoenas Post-Indictment**

The government maintains that the post-indictment DOJ subpoenas issued under the authority of 18 U.S.C. § 3486 were valid as they were issued in connection with an on-going investigation relating to a federal health care offense. According to the

10

government, the information obtained from the post-indictment subpoenas was used to form the basis of additional counts alleged in the superseding indictment.

In response, Lazar submits that the government's authority to use DOJ health care subpoenas is limited by the words of the statute to criminal *investigations* and not for gathering evidence for the *prosecution* of pending criminal cases. According to Lazar, the term "investigation" encompasses all actions taken by the government which may eventually lead to an indictment. Thus, investigation does not include steps taken to prepare for and prosecute pending criminal cases or to discover evidence related to the original indictment. In this case, Lazar alleges that the DOJ subpoenas were used to gather evidence in preparation for prosecution of the pending indictment; therefore, the government exceeded the plain language of the statute.

Section 3486 authorizes the Attorney General to issue in writing an administrative subpoena requesting the production of any records relevant to "any investigation of a Federal health care offense." It states:

§ 3486. Administrative subpoenas
(a) Authorization.
    (1)In any investigation of -
        (i) A Federal health care offense . . . , the
        Attorney General . . . may issue in writing
        and cause to be served a subpoena requiring
        the production and testimony describe in

11

subparagraph (B).

18 U.S.C. § 3486.   The term "federal health care offense" is defined in 18 U.S.C. § 24 as a violation of, or a criminal conspiracy to violate, 18 U.S.C. § 669 (theft or embezzlement from a health care benefit program), § 1035 (making false statements in relation to delivery of or payment for health care benefits), § 1347 (fraud on a health care benefit program) or § 1518 (obstruction of criminal investigation of health care offenses). 18 U.S.C. § 24.   Lazar has been charged with violations of 18 U.S.C. § 1347.   The term "investigation" is not defined in the statute or title.

This statute effectively gives the federal government's chief prosecutor broad investigatory subpoena powers.   Pursuant to the plain language of the statute, these powers may only be used in furtherance of investigating criminal health care offenses as opposed to regulatory compliance or both civil regulatory matters and criminal matters.   *In re Subpoenas Duces Tecum*, 51 F.Supp.2d 726, 735 (W.D.Va. 1999).   Indeed, the Congressional Record indicates that Congress intended to enhance the investigatory tools of the United States in criminal health care fraud investigations. The statute itself contains no limitations on the use of the administrative criminal investigatory subpoenas.

On the other hand, as evidenced by the plain language of the

12

statute, Congress did not include any specific grant of authority to the Department of Justice to use administrative health care subpoenas to gather evidence for an upcoming trial. Had Congress intended for administrative criminal investigatory subpoenas to be used to enhance discovery of evidence related to the charges in a pending indictment, Congress could have explicitly provided such authority in the statute.

The Supreme Court has made clear that the use of administrative subpoenas to gather evidence for criminal prosecution of an indicted defendant is forbidden. In *United States v. LaSalle Nat. Bank*, 437 U.S. 298 (1978), the Court faced the issue of whether an IRS subpoena is proper when the sole purpose was to unearth evidence of criminal conduct. In *LaSalle*, the Internal Revenue Service agent issued two summonses pursuant to 26 U.S.C. § 7602 to LaSalle National Bank. LaSalle refused to produce the materials requested because it argued that the IRS investigation was purely criminal in nature. The IRS sought enforcement of the summonses. The trial court denied enforcement on the ground that the IRS did not issue the summons in good faith because the summons was issued solely to obtain evidence for use in a criminal prosecution. The appellate court affirmed.

The Supreme Court granted certiorari to determine whether the lower court correctly refused to enforce the IRS summonses. The

Court reversed and held that because Congress created a tax enforcement system with interrelated criminal and civil elements in enacting 26 U.S.C. § 7602, it did not intend for IRS subpoena power to be limited merely because of the presence of a criminal violation.

The Court's discussion regarding the use of an administrative summons did not end there, however. The Court went on to discuss the limitations on the use of a § 7602 summons and the policy concerns that arise at the time when a case is referred for criminal prosecution to the Judicial Department. The Court stated that:

> Nothing in § 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation. The likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post-referral use of the summons authority were permitted.

*Id.* at 312. The Court further stated that:

> We cannot deny that the potential for expanding the criminal discovery rights of the Justice Department or for usurping the role of the grand jury exists at the point of the recommendation by the special agent.

*Id.* at n.15. Based on these statements, it is clear that the Court was not willing to empower the Department of Justice with the

14

authority to secure criminal litigation discovery through an administrative subpoena. The same is true for an administrative subpoena under the authority of 18 U.S.C. § 3486.

In the present the case, the court need not decide whether the phrase "in any investigation" as used in 18 U.S.C. § 3486 contemplates the use of an administrative health care subpoena to obtain litigation discovery for use in the prosecution of a pending indictment.[1]   Rather, the pivotal issue is factual:  whether the government issued the subpoena as part of an ongoing criminal investigation.   This factual inquiry necessarily raises the question of which party bears the burden of proof.

The court recognizes that in both *United States v. LaSalle*, 437 U.S. 298 (1978) and *United States v. Weingarden*, 473 F.2d 454 (6th Cir. 1973), the Supreme Court and the Sixth Circuit Court of Appeals concluded that the burden of proof was on the respondent, rather than the government, to show that the sole purpose of the summons was to obtain evidence for a criminal prosecution.  Unlike the present case, however, these cases dealt specifically with

---

1.    The government more or less concedes as much in its response.  In its response, the government cites *United States v. Breitkreutz*, 977 F.2d 214 (6th Cir. 1992) for the proposition that it could have used grand jury subpoenas rather than § 3486 subpoenas to investigate post-indictment, as long as the sole or dominant purpose was not to discover facts about the pending indictment.

summonses issued for both civil and criminal investigations.   As stated before, § 3486 subpoenas are only to be issued as a part of a criminal investigation.   Thus, as the cases cited above are distinguishable from the instant case, the court is not bound by the Court's findings in regard to the burden of proof.

In the present case, the court finds that the government should bear the burden of proving that its intentions in issuing § 3486 subpoenas were to seek information that was related to the investigation of potential criminal violations, rather than to discover information to be used in the prosecution of a pending indictment.   This would no doubt be an impossible burden for a criminal defendant to prove as a defendant would not privy to the government's intentions, nor would the defendant be privy to the information received by the government as a result of the subpoenas.   Indeed, the court cannot envision a scenario where a defendant would ever be able to disprove that the government was seeking information for a subsequent indictment.   Therefore, the government, as the party who seeks the subpoenaed information, must prove its intentions were in conformity with the language of the 18 U.S.C. § 3486 when a defendant presents a challenge of this kind.

The government insists that the subpoenas were not issued for

the purposes of trial preparation or discovery but rather as part of an ongoing health care fraud investigation of Lazar. In its responsive pleadings in 04-MC-018, the government states that the records were sought to "provid[e] the government with crucial information related to the defendant and the ongoing scheme to defraud." Indeed, the government stated in open court that some of the information sought by the subpoenas was used in connection with the superseding indictment. Because these conclusory statements, did not satisfy the court, the government was directed to file an *in camera* submission with the court on or before June 2, 2005, to verify and explain more thoroughly its ongoing criminal investigation. The government submitted this information on June 23, 2005, along with a brief explaining the significance of each category of subpoenas and how each related to the superseding indictment. After reviewing the subpoenas issued to the hospitals and the superseding indictment, the court finds that the government's statements regarding an ongoing investigation are still conclusory and the government has offered no evidence that suggests that the information received as a result of the subpoenas was used to indict Lazar on further counts in the superseding indictment, nor has the government offered any evidence to suggest that the subpoenas issued to the hospitals were seeking information to support a superseding indictment.

The superseding indictment restated 114 of the original 115 counts that were present in the initial indictment. There were six new counts added to the superseding indictment bringing the total number of counts to 120. Three of the new counts were related to alleged upcoding of patient bills. The government concedes that the information which provides the basis for these counts was received from subpoenas issued to Managed Care Organizations not from the subpoenas issued to the hospitals. Likewise, the information which forms the basis of the three other new counts for false certifications of payments was obtained by issuing subpoenas to colleges and university hospitals as well as to the American Board of Otolaryngology. Thus, none of the new counts were added as a result of information received from subpoenas issued to local hospitals.

The subpoenas issued to the hospitals pursuant to § 3486 sought records of every meeting or discussion regarding Dr. Lazar's privileges at the hospital. The nature of these records do not lend themselves to potential criminal violations. Dr. Lazar's privileges had been suspended because of his past conduct giving rise to the original indictment in January of 2004. Despite having numerous opportunities to do so, the government has failed to demonstrate how Lazar's alleged false representations made to peer review committees would or did lead to further criminal violations.

18

Moreover, the government has failed to explain to the satisfaction of the court how healthcare subpoenas issued to hospitals regarding a doctor's privileges would lead to further charges of healthcare fraud.

As such, the government's use of DOJ subpoenas for some purpose other than an investigation was beyond that which is authorized by the statute. Accordingly, it is recommended that all records subpoenaed post-indictment from hospitals be suppressed.

## CONCLUSION

It is recommended that Lazar's motion to suppress all records subpoenaed from hospitals be granted.

Respectfully submitted this 29th day of July, 2005.


DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

19

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 360 in case 2:04-CR-20017 was distributed by fax, mail, or direct printing on August 1, 2005 to the parties listed.

---

Stephen Farese
FARESE FARESE FARESE, PA
122 Church Street
P.O. Box 98
Ashland, MS 38603

Cam Towers Jones
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Marc N. Garber
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd., NE
Ste. 14
Marietta, GA 30068

Peter M. Coughlan
OFFICE OF THE ATTORNEY GENERAL
425 Fifth Ave., N.
Nashville, TN 37243--049

Kevin P. Whitmore
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT