IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,  ◊
  ◊
    Plaintiff,  ◊
  ◊
vs.  ◊  No. 04-20017-DV
  ◊
RANDE LAZAR, M.D., d/b/a  ◊
OTOLARYNGOLOGY CONSULTANTS  ◊
OF MEMPHIS,  ◊
  ◊
    Defendant.  ◊
  ◊

---

**ORDER ADOPTING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE'S
REPORT AND RECOMMENDATION (DOC. NO. 360)
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ALL RECORDS
ILLEGALLY SUBPOENAED POST-INDICTMENT FROM HOSPITALS (DOC. NO. 76)
ORDER REJECTING THE MAGISTRATE'S REPORT
AND RECOMMENDATION (DOC. NO. 359)
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND EXCLUDE ALL
RECORDS SUBPOENAED PURSUANT TO DOJ HEALTHCARE SUBPOENAS (DOC. NO.
202)**

---

Before the Court are Defendant's Motion to Suppress All
Records Illegally Subpoenaed Post-Indictment From Hospitals (doc.
no. 76) and Motion to Suppress And Exclude All Records Subpoenaed
Pursuant To DOJ Healthcare Subpoenas (doc. no. 202).  Both motions
are concerned with the government's use of administrative health
care subpoenas pursuant to 18 U.S.C. § 3486.  The former, more
narrow, motion seeks suppression of records obtained by virtue of
the subpoenas served on hospitals post-indictment, while the
latter, broader, motion seeks suppression of all records obtained
through § 3486 subpoenas.  The motions were referred to the
Magistrate Judge for a Report and Recommendation.  On July 29,

2005, the Magistrate Judge issued her Reports as to both motions. See doc. nos. 359 & 360.

The Court has reviewed the Magistrate Judge's Recommendations and conducted a *de novo* review of the record. Based on its *de novo* review, the Court REJECTS the Magistrate Judge's Recommendation as to Defendant's motion to suppress all records and ADOPTS-IN-PART and REJECTS-IN-PART the Recommendation to suppress all records obtained post-indictment. The Court will address Defendant's Motions in the order in which he brought them before the Court. Thus, the Court will address the more narrow motion prior to the broader motion. For the reasons stated below, the Court finds that there is neither a constitutional nor statutory impediment to the government using § 3486 as it has in this case. Accordingly, the Court DENIES Defendant's Motions to Suppress.

## I.  MOTION TO SUPPRESS HOSPITAL RECORDS OBTAINED POST-INDICTMENT

### A.  BACKGROUND

Defendant has moved to suppress all records of hospital peer-review committees which were subpoenaed by the government subsequent to the initial indictment of Defendant but prior to the return of the superseding indictment. See Defendant's Motion, doc. no. 76. Defendant first contended that the records should be suppressed because they were obtained in violation of the law governing both trial subpoenas under Fed. R. Civ. P. 17(c) and grand jury subpoenas. The government responded to Defendant's motion, clarifying that it subpoenaed the peer-review records pursuant to its authority to issue federal health care

2

administrative subpoenas under 18 U.S.C. § 3486. <u>See</u> Plaintiff's Response, doc. no. 130. The government also contended that the Defendant lacked standing to object to the government's use of the administrative subpoenas because they were issued only to third party hospitals.

In a reply brief, Defendant acknowledged the inaccuracy of his former assertions regarding the basis for the subpoenas, but nonetheless continued to maintain that the records obtained through the subpoenas should be suppressed. <u>See</u> Defendant's Reply, doc. no. 185. Defendant first asserted that he had standing to challenge the validity of the subpoenas by virtue of the Fourth, Fifth, and Sixth Amendments, and pursuant to a judicially recognized doctrine of implicit "target" standing to challenge the exercise of statutorily created subpoena power which allegedly exceeds the scope of the authorizing statute. As to the merits of his motion to suppress, Defendant contended that the government's use of the § 3486 subpoenas exceeded the grant of authority in that statute, that the subpoenas were used to gather evidence for the pending prosecution of Defendant without the requisite showing of probable cause before the judiciary, and that use of the subpoenas violated "defendant's due process and fair trial rights under the Fifth and Sixth Amendments." <u>Id.</u> at 11.

The Magistrate Judge conducted a hearing on Defendant's suppression motion on May 25, 2005. At the hearing, the Magistrate ordered the government to submit further briefing, *in camera, ex parte,* and under seal, on the relationship between the

3

administrative subpoenas issued post-indictment and the government's allegedly ongoing investigation of Defendant. The government tendered its brief on June 21, 2005, and the Magistrate Judge issued her Report and Recommendation on July 29, 2005.

**B. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

In her report, the Magistrate Judge recommended that Defendant's motion to suppress be granted by the Court. The Magistrate accepted Defendant's assertions that standing to challenge the administrative subpoenas is conferred upon him by the Fourth Amendment and, implicitly, the statute authorizing the use of administrative subpoenas. The Magistrate did not address Defendant's separate argument that he has standing to challenge the subpoenas under the Fifth and Sixth Amendments.

Regarding Defendant's claim of Fourth Amendment standing, the Magistrate concluded that Tennessee's medical peer-review statute, Tenn. Code Ann. § 63-6-219(e), confers upon Defendant an expectation of privacy in the records of hospital peer-review committees that society recognizes as reasonable. Report and Recommendation, doc. no. 360 at 7-8. The Magistrate reasoned that Defendant's expectation was reasonable because the state statute imbues the records of medical peer-review committees with confidentiality and, in most cases, an evidentiary privilege in state courts. The Magistrate further reasoned that the lack of a similar federal evidentiary privilege did not render the records non-confidential or diminish the Defendant's reasonable expectation of privacy in the committee records. Id. at 8.

4

As to Defendant's assertion of statutory "target" standing, the Magistrate accepted Defendant's contention that, pursuant to the Sixth Circuit's decision in In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada, 523 F.2d 562 (6th Cir. 1975), "[b]ecause [Defendant] is claiming that the DOJ exceeded its administrative subpoena authority granted by 18 U.S.C. § 3486 and the records are to be used against him, [Defendant] has standing to challenge the validity of the DOJ subpoenas to the hospitals." Report and Recommendation at 10.

Substantively, the Magistrate first examined § 3486 and discussed the scope of the statute's grant of administrative subpoena power.  The Magistrate concluded that, despite the fact that the "statute effectively gives the federal government's chief prosecutor broad investigatory subpoena powers, . . . Congress did not include any specific grant of authority to the Department of Justice to use the administrative health care subpoenas to gather evidence for an upcoming trial." Id. at 12-13.  Citing United States v. LaSalle Nat. Bank, 437 U.S. 298 (1978), the Magistrate opined that the Supreme Court has specifically forbidden the use of administrative subpoenas for such purposes, in order to maintain traditional limitations on the government's right of discovery in criminal prosecutions and to preserve the grand jury's role as the "principal tool of criminal accusation." Report and Recommendation at 14 (quoting LaSalle, 437 U.S. at 312).  The Magistrate thus concluded that its inquiry was reducible to whether or not the

5

government properly used the § 3486 subpoenas "as part of an ongoing criminal investigation." Id. at 15.

The Magistrate first decided that the Government ultimately should bear the burden of establishing that its use of the subpoenas was in conjunction with a valid investigation and not to obtain evidence "to be used in the prosecution of a pending indictment." Id. at 16. The Magistrate foisted this burden on the government because, purportedly, it would be impossible for a criminal defendant to prove the government's use of the subpoenas was legitimate given that the "defendant would not [be] privy to the government's intentions, nor would the defendant be privy to the information received by the government as a result of the subpoenas." Id.

The Magistrate determined that the Government failed to "prove its intentions were in conformity with the language of the [sic] 18 U.S.C. § 3486" because the government's assertions, including those made in the government's in camera submission, that the subpoenas were issued in furtherance of its ongoing investigation were merely conclusory:

> the government has offered no evidence that suggests that the information received as a result of the subpoenas was used to indict [Defendant] on further counts in the superseding indictment, nor has the government offered any evidence to suggest that the subpoenas issued to the hospitals were seeking information to support a superseding indictment.

Id. at 17. The Magistrate further determined that the nature of the records subpoenaed by the government do not "lend themselves to potential criminal violations," and that the government failed to

demonstrate how the Defendant's allegedly false statements before the peer-review committees "would or did lead to further criminal violations." Id. at 18. Having therefore concluded that the government's use of the § 3486 subpoenas exceeded the scope of that statute, the Magistrate recommended that Defendant's motion to suppress the records obtained through those subpoenas should be granted.

The government has filed its objections to the Magistrate's Report and Recommendation, and the Defendant has responded to those objections.

### C. ANALYSIS

#### 1. Standing

The Court must first address standing "because if a defendant lacks standing the Court's analysis is over." Defendant's Reply, doc. no. 185 at 2. The Magistrate found that Defendant has standing to object to the government's use of § 3486 subpoenas under the Fourth Amendment and, implicitly, § 3486 itself. The Court will address each finding below.

#### a. Fourth Amendment

Because Defendant seeks suppression of records turned over by third-party recipients of administrative subpoenas, he must demonstrate that he has a "legitimate expectation of privacy attaching to the records" in order to have Fourth Amendment standing to challenge the validity of the subpoenas. United States v. Phibbs, 999 F.2d 1053, 1077 (6th Cir. 1993). The Sixth Circuit

> employ[s] a two-part inquiry for determining whether a
> legitimate expectation of privacy exists: "'First, we ask

7

whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private. . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable.'"

United States v. Waller, 426 F.3d 838, 844 (6th Cir. 2005)(citations omitted).  Regarding the first prong of the inquiry, Defendant, by his own conduct, has done nothing to diminish whatever expectation of privacy he has in the records of the peer-review committees.  As to the second prong, and as noted above, the linchpin of the Magistrate's conclusion that Defendant has Fourth Amendment standing to challenge the § 3486 subpoenas was her finding that Defendant's expectation of privacy is recognized by society as reasonable given that Tennessee's peer-review statute, Tenn. Code Ann. § 63-6-219, requires peer-review records to be maintained confidential and, in most cases, privileged from discovery in judicial proceedings.

Defendant concedes that there is no privilege similar to Tennessee's in the federal law.  Rather, Defendant maintains that his legitimate expectation of privacy in the records owes "merely" to the fact that the records are to be kept confidential pursuant to state statute.  Defendant's Reply, doc. no. 185 at 5.  While it is undisputed that the peer-review statute affords the information provided to and generated by peer-review committees a measure of confidentiality and, hence, a prohibition on general disclosure to the public, it is important to note that the peer-review law is intended to encourage candid peer evaluations by affording committee members and witnesses immunity from civil suit for their

8

actions during committee proceedings.  To that end, the records of such committees are deemed confidential and privileged from civil discovery or court subpoena.  Society, as reflected by Tennessee's duly enacted law, however, does not recognize a reasonable expectation of privacy in peer review records which can be asserted against the government, state or federal, in the pursuit of a criminal prosecution.  See Logan v. Everett, 2006 WL 223708 at *5 (Tenn. Ct. App. Jan. 27, 2006)(recognizing that the peer-review statute's privilege from discovery applies only in civil proceedings).  Thus, though the statute provides that "the records and proceedings of any such committees are confidential . . . and shall not be public records nor be available for court subpoena or for discovery proceedings," Tenn. Code Ann. § 63-6-219(e), it effects no limitation on the government's ability to access peer-review records in aid of its criminal investigations.  Because the Fourth Amendment is concerned with government action unreasonably infringing on privacy, see United States v. Jacobsen, 466 U.S. 109, 113 (1984), a component of standing to challenge the administrative subpoenas under the Fourth Amendment must be that society recognizes a reasonable expectation of privacy in the peer-review records applicable to the government, not just the general public. Moreover, Defendant has not demonstrated how allowing the government to use the materials gained through its subpoenas of peer-review records in its criminal investigation will defeat or otherwise undermine the policy interests apparent on the face of the peer-review statute.  Thus, because neither Tennessee nor

federal law recognizes that Defendant can reasonably expect
hospital peer-review records to remain privileged or confidential
when sought by the government in a criminal matter, Defendant
cannot have Fourth Amendment standing to challenge the § 3486
subpoenas on the basis of the limited expectation of privacy
afforded him by Tennessee's peer-review statute.  Cf. Doe v.
Broderick, 225 F.3d 440, 449-51 (4th Cir. 2000)(finding that
federal statute specifically restricting criminal discovery of
patient's medical records indicated an expectation of privacy in
such records recognized by society as reasonable and thus allowing
patient to prosecute Fourth Amendment civil rights claim).

### b. Statutory "Target" Standing

The Magistrate also accepted Defendant's contention that §
3486 implicitly provides the target of an investigation pursuant to
which the administrative subpoena is employed standing to challenge
the government's use of the subpoena as excessive of its statutory
authority.  To this end, the Magistrate necessarily concurred with
Defendant's assertion that the Sixth Circuit's decision in In re
Letter Rogatory imparts a "general rule of standing applicable
whenever the government exceeds its authority under a statute
authorizing it to obtain records from third parties." Defendant's
Response, doc. no. 384 at 6.

In In re Letter Rogatory, the Sixth Circuit addressed whether
a person targeted by a letter from a foreign tribunal which
requested federal judicial assistance had standing to challenge the
domestic court's issuance of a subpoena of the target's bank

records under 28 U.S.C. § 1782.  523 F.2d at 563.  Though the Court acknowledged that Defendant lacked Fourth or Fifth Amendment standing to challenge the court's subpoena, the Court determined that

> it does not follow that appellant lacks standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute.
>
> While it has been held that federal courts have inherent power to issue and respond to letters rogatory, such jurisdiction has largely been regulated by congressional legislation.  Where Congress has intervened, the scope of the congressional authorization necessarily limits and defines the judicial power to render and seek such assistance.  Thus a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of the applicable statute, here 28 U.S.C. s 1782.  We hold that Fecarotta has standing to challenge the validity of the subpoena on the theory that it is not authorized by s 1782, the governing statute.

Id. at 564 (citations omitted).  Thus, from the foregoing, it is apparent that the Sixth Circuit implied a right of standing to challenge § 1782 subpoenas simply as a check on whether a district court has exceeded the scope of its statutorily expanded jurisdiction to respond to a letter requesting judicial assistance. The Sixth Circuit's holding is consistent with numerous cases construing § 1782, which fairly uniformly hold that "one against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused."  In re Letter of Request from Crown Prosecution Service of United Kingdom, 870 F.2d 686, 689 (D.C. Cir. 1989).  See also Application of Sarrio, S.A., 119 F.3d 143, 148 (2d Cir. 1997)(same).

In its objections to the Magistrate's Report and Recommendations, the government asserts that "[t]he Letter Rogatory analysis is limited to information sought pursuant to Title 28 U.S.C. § 1782." United States' Objections, doc. no. 377 at 12. The government would so confine the In re Letter Rogatory analysis because, it stresses, standing is more generously allowed when objecting to requests for information from foreign tribunals than when objecting to the government's enforcement of its laws. Defendant dismisses the government's distinction because it rests on the fact that different statutorily authorized subpoena powers are at issue, equating the government's argument with "saying the *Miranda* rule only applies to people named Miranda." Defendant's Response, doc. no. 384 at 6.

Neither party cites, nor has the Court located during its own review, any authority supporting or undermining either the proposition that the "target" standing Defendant seeks is unique to § 1782, or that it should also be implied into the various statutes, including § 3486, authorizing the use of administrative subpoenas in criminal "investigations." Defendant, like the District of Columbia Circuit Court in In re Letter of Request from Crown Prosecution Service of United Kingdom, see 870 F.2d at 689 n.1, analogizes the implied standing of § 1782 with the right of target taxpayers to challenge I.R.S. tax summonses issued to third parties under 26 U.S.C. § 7602 that was recognized by the Supreme Court in Reisman v. Caplin, 375 U.S. 440, 449 (1964). While it is evident that the statutory scope of the subpoena and/or summons

12

powers authorized in §§ 1782, 7602, and 3486 varies greatly, the criminal investigatory authority manifested in § 3486 is the broadest of the relevant provisions. Doe v. United States, 253 F.3d 256, 265-66 (6th Cir. 2001). Moreover, it is telling that, since the Court's holding in Reisman, Congress has statutorily authorized third-party standing to challenge § 7602 subpoenas in limited circumstances, see 26 U.S.C. § 7609, while yet refusing to authorize similar standing to challenge a subpoena under § 3486 or, for that matter, any other similar administrative subpoena.

Nevertheless, the Court finds that the limited scope of the subpoena or summons power authorized in the relevant statute is not a sufficiently principled basis upon which to refuse to apply the reasoning of the §§ 1782 and 7602 cases in the instant matter. That is, standing to challenge whether a particular agency has exceeded the scope of its statutory authority to employ a particular discovery mechanism should not be determined on the basis of how restrictively the statute defines that authority. Though the Court is uncomfortable with reading into § 3486 an implied right of standing,[1] the Court can discern no compelling

---

[1]    The Court's discomfort stems largely from the fact that Defendant cites to no case where a court has granted third-party "target" standing to challenge the constitutionality of and/or statutory authority for a criminal investigative or administrative subpoena like the § 3486 subpoena at issue in this case.  Meanwhile, federal courts have denied third-party standing to challenge the constitutionality of and statutory authority for the government's use of administrative subpoenas under both § 3486 and the fairly analogous provision pertaining to the DEA's authority, at 21 U.S.C. § 876(a), to issue administrative subpoenas in "investigations." See, e.g., United States v. Plunk, 153 F.3d 1011 (9th Cir. 1998); United States v. Moffett, 84 F.3d 1291, 1293-94 (10th Cir. 1996).  Perhaps it is only through the simple expedient of artful pleading that Defendant is able to distinguish this matter from the cited cases and successfully persuade the Court that he has standing to challenge the § 3486
(continued...)

13

reason not to apply the reasoning of the various Courts of Appeals and the Supreme Court in the §§ 1782 and 7602 cases in this context. Accordingly, the Court finds that Defendant has standing to challenge whether the government exceeded the scope of § 3486 in issuing subpoenas post-indictment to hospitals in order to obtain records of hospital peer-review committees.

## 2. Substantive Claims

Defendant contends that suppression of the peer-review records obtained post-indictment pursuant to § 3486 is appropriate because: 1) the government exceeded its statutory authority in, allegedly, issuing the subpoenas to obtain evidence for trial on the charges of the original indictment; 2) the government issued the subpoenas to obtain trial evidence without making the requisite probable cause showing in advance; 3) the government's use of the subpoenas violates rules governing criminal discovery; and 4) allowing the government to use such subpoenas post-indictment violates Defendant's due process and fair trial rights under the Fifth and Sixth Amendments. The government responds that it legitimately utilized its subpoena authority in furtherance of its continuing investigation of Defendant and that, in any event, the Sixth Circuit has approved the use of administrative subpoenas post-indictment to "discover evidence related to the charges in the original indictment." Phibbs, 999 F.2d at 1077. The Court will address Defendant's asserted grounds for suppression below.

---

[1]   (...continued)
subpoenas issued in this case on the basis of some alleged statutory excessiveness.

14

### a.   Impermissible Statutory Excess

Defendant's primary argument in favor of suppression concerns the government's purportedly improper use of § 3486 to, as alleged, obtain evidence for trial on already pending charges.  As noted above, the Magistrate concluded that the "Supreme Court has made clear that the use of administrative subpoenas to gather evidence for criminal prosecution of an indicted defendant is forbidden." Report and Recommendation, doc. no. 360 at 13.  The Magistrate's authority for this proposition is the Court's decision in LaSalle. In LaSalle, the Court was concerned with an Internal Revenue Service agent's use of § 7602 summonses in pursuit of an investigation which the agent conceded was purely criminal in nature.  Lower courts had refused to enforce the summonses because of the agent's stated intent but the Supreme Court reversed, holding that, given the intertwined civil and criminal nature of the Service's investigative duties, the subjective intent of the agent cannot, absent a showing of systemic institutional bad faith, override the Service's "institutional responsibility" to investigate civil tax liability up to the point of a referral for criminal prosecution.  LaSalle, 437 U.S. at 314-15, 319-20.  The I.R.S. was forbidden to use a § 7602 summons to purportedly investigate civil liability after a criminal referral merely as a "prophylactic" measure to protect policy interests including avoiding the expansion of the Justice Department's criminal discovery capacity and infringing on the province of the grand

15

jury.  _Id._ at 312.  The Court justified its prophylactic measure as follows:

> Nothing in § 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation.  The likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post-referral use of the summons authority were permitted.

_Id._ (citations omitted).  The Magistrate seized upon this passage to conclude that the Supreme Court declined to empower the Justice Department to "secure criminal litigation discovery through an administrative subpoena [pursuant to § 7602]."  Report and Recommendation, doc. no. 360 at 14-15.  The Magistrate concluded, without citation to authority, that "the same is true for an administrative subpoena under the authority of 18 U.S.C. § 3486."  _Id._ at 15.

The Magistrate failed to recognize, however, that courts have generally limited the reach of _LaSalle_ due to the strict and unique limitations embodied in the Internal Revenue Code provisions at issue in that case: "[T]he _LaSalle_ rule applies solely to the statutory scheme of the Internal Revenue Code, in which the IRS's civil authority ceases for all practical purposes upon referral of a taxpayer's case to Justice."  _Securities Exchange Commission v. Dresser Industries, Inc._, 628 F.2d 1368, 1378 (D.C. Cir. 1980).  _See also Doe_, 253 F.2d at 264-65; _Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corporation_, 5 F.3d 1508, 1518 (D.C. Cir. 1993); and _Donovan v. Spadea_, 757 F.2d 74, 77-78 (3d Cir. 1985).  The Magistrate's extension of the rule of _LaSalle_ in

16

this matter is unsupported by precedent and disregards the limited applicability of that rule given the unique circumstances predicating the Supreme Court's decision. Accordingly, the Court cannot accept the Magistrate's recommendation that <u>LaSalle</u> forbids the government from using the § 3486 subpoenas as it has in this case.

The Court, therefore, is left with two inquiries in order to resolve this portion of Defendant's motion: 1) whether or not the government may use § 3486 subpoenas to obtain evidence related to charges in a pending indictment; and, if not, 2) whether the government has impermissibly done so in this case. Addressing the latter inquiry, the Magistrate first determined that the government must "bear the burden of proving that its intentions in issuing § 3486 subpoenas were to seek information that was related to the investigation of potential criminal violations, rather than to discover information to be used in the prosecution of a pending indictment." Report and Recommendation, doc. no. 360 at 16. As noted above, having shifted this burden onto the government, the Magistrate ultimately concluded that the government had failed to establish that its use of the subpoenas was consistent with a further investigation into possible charges. <u>Id.</u> at 17-19. Before it is necessary for the Court to examine the Magistrate's conclusions in this regard, the Court must first determine if the government is precluded from employing its subpoena authority in order to obtain evidence of charges in a pending indictment.

17

Though the government asserts that it used the § 3486 subpoenas only in furtherance of its continuing investigation of Defendant, purportedly to investigate whether he continued to engage in alleged billing fraud after indictment, the government nevertheless contends that it is fully empowered to use administrative subpoenas to discover evidence related to charges already pending in an indictment. See Plaintiff's Response, doc. no. 130 at 3 (quoting Phibbs, 999 F.2d at 1077); United States' Objections, doc. no. 377 at 20 (same). In Phibbs, a defendant, Rojas, challenged the government's use of D.E.A. administrative subpoenas, pursuant to 21 U.S.C. § 876, to obtain documents and records after the return of a sealed indictment. Phibbs, 999 F.2d at 1076. Specifically, Rojas contended that the government could not use the § 876 subpoenas to obtain evidence related to the pending indictment "without a demonstration of probable cause before a neutral magistrate." Id. The Sixth Circuit compared the government's relative authority in employing the investigatory powers of the grand jury and § 876, noting that after indictment

> the government must cease its use of the grand jury in
> preparing its case for trial. It may, however, continue
> to employ the grand jury process as part of an ongoing
> investigation, possibly leading to further charges
> against the subject of the former indictment. Section
> 876 of title 21 simply furnishes the Attorney General and
> his delegates with an alternative mechanism for carrying
> on the investigation.

Id. at 1077 (citations omitted). The Sixth Circuit then noted one drastic difference inhering in the investigatory powers reposed in § 876 as opposed to the grand jury: "However, unlike the grand jury system, it [§ 876] may also be used to discover evidence related to

the charges in the original indictment." Id. Thus, the Sixth Circuit held that D.E.A. administrative subpoenas may be employed to uncover evidence related to charges in a pending indictment. The Sixth Circuit's conclusion in this regard is joined by other courts construing the same and/or similar statutorily created administrative subpoenas. See U.S. v. Harrington, 761 F.2d 1482, 1485 (11th Cir. 1985)(§ 876 subpoenas issued post-indictment); U.S. v. Wachter, 2006 WL 2460790 at *6-*7 (E.D. Mo. Aug. 23, 2006)(health care subpoenas issued post-indictment); U.S. v. Daniels, 2000 WL 764951 at *4-*5 (D. Kan. May 22, 2000)(§ 3486 subpoenas issued post-indictment). Defendant offers no authority, other than the tax cases discussed and distinguished above, for his proposition that the government cannot use its administrative subpoena powers to investigate charges in a pending indictment.[2] Moreover, the Magistrate does not discuss Phibbs outside of distinguishing that decision's discussion of standing to challenge administrative subpoenas under the Fourth Amendment. Clearly the Sixth Circuit has contemplated the use of administrative subpoenas to gather evidence related to charges in a pending indictment and,

---

[2] Defendant curiously dismisses the government's contention that it may use administrative subpoenas to obtain evidence related to charges in its original indictment as an "extraneous argument," given the Magistrate's factual conclusion that the government impermissibly used the § 3486 subpoenas as a surrogate for discovery pursuant to the federal rules. Defendant's Response, doc. no. 384 at 18. However, the issue of the legality of such actions as recognized by the the Sixth Circuit is hardly "extraneous." Indeed, it is, initially, a paramount concern in determining the legality of the government's use of § 3486 subpoenas in this matter. Furthermore, Defendant hardly considered this argument "extraneous" prior to the issuance of the Magistrate's Report and Recommendation, having devoted considerable effort in an attempt to distinguish Phibbs at the hearing on this matter. See Transcript, Hearing on Motion to Suppress All Records Illegally Subpoenaed Post-Indictment From Hospitals, May 25, 2005 (hereinafter "Transcript"), doc. no. 351 at 13-15.

despite the policy concerns articulated in <u>LaSalle</u>, has concluded, consistent with other federal courts, that the government may employ certain statutory subpoena powers in this fashion.

Thus, the inquiry must proceed to whether or not the government is permitted to use the health care administrative subpoenas at issue in this case similarly to the uses contemplated by the Sixth Circuit in <u>Phibbs</u>.  Section 876 authorizes the Attorney General to subpoena records deemed relevant to "any investigation relating to his functions under this subchapter with respect to controlled substances."  <u>Phibbs</u>, 999 F.2d at 1076. Similarly, § 3486 authorizes the Attorney General[3] to subpoena records and information relevant to "any investigation" of a "Federal health care offense."  18 U.S.C. § 3486.  Defendant asserts that "reliance on <u>Phibbs</u> is grossly mistaken" because the government is authorized by § 876 to subpoena records for use in civil and administrative proceedings in addition to criminal investigations, while § 3486 limits the government's subpoena authority to investigations of health care offenses.  Defendant's Reply, doc. no. 185 at 7-8.  Defendant's distinction between the

_____

[3]   The Court pauses here to briefly address Defendant's argument, lodged for the first time in his response to the government's objections to the Magistrate's Report and Recommendation, that the Assistant United States Attorneys who issued the administrative subpoenas were not authorized to do so under § 3486 because that provision, in its current form, extends the subpoena authority only to the Attorney General and was amended, in 2000, to remove language authorizing designees of the A.G. to issue health care subpoenas.  For the reasons stated in the government's reply to Defendant's response, doc. no. 388 at 4-6, the Court finds that the authority to issue § 3486 subpoenas was properly delegated by the A.G. to United States Attorneys and Assistant United States Attorneys by virtue of 28 U.S.C. § 510 and Attorney General Order No. 2468-2001.  <u>See</u> <u>Application of Presidential Comm'n on Organized Crime</u>, 763 F.2d 1191, 1200-01 (11th Cir. 1985).

two statutes is unavailing.[4]  Defendant concludes that there was no statutory excess in Phibbs because of the broader, though entirely unrelated, scope of § 876, while asserting such statutory excess in this case even though the government is empowered, in both §§ 876 and 3486, with broad criminal investigatory subpoena powers.  The facts of Phibbs are clear and are acknowledged by Defendant: "the prosecution in Phibbs used a DEA subpoena to gather trial evidence" for a criminal case.  Defendant's Reply, doc. no. 185 at 7.  This is precisely the conduct of which Defendant complains in this matter.  Regardless of the fact that the government may use D.E.A. subpoenas to gather evidence for civil and/or administrative proceedings, § 876 does no more, on its face, to broaden the criminal discovery rights of the government than does § 3486.  It is thus eminently clear that the broad criminal investigative subpoena powers granted in §§ 876 and 3486 are sufficiently similar to conclude that the Sixth Circuit's discussion of the government's authority under § 876 should apply with equal force in the context of § 3486.  To conclude otherwise, as Defendant urges the Court to

---

[4]     Indeed, arguing that Phibbs has no bearing on this case because a different statute is involved is, in Defendant's own words, "an argument tantamount to saying the Miranda rule only applies to people named Miranda." Defendant's Response, doc. no. 384 at 6.  Defendant proffered his Miranda analogy in refuting the government's assertion that the judicially implied standing recognized in the § 1782 cases should not be extended to § 3486 cases.  The Court largely accepted Defendant's premise.  See supra pgs. 11-13.  Defendant's reasoning applies with equal force in this context.  The statutory subpoena powers at issue in Phibbs and the instant matter are, in relevant aspects, similar.  That is, in conducting a criminal "investigation," under both statutes the executive is afforded a broad power to subpoena relevant documents and records.  The subpoena powers manifested in §§ 876 and 3486 share greater similarity with each other than with § 1782, where Congress has intervened to enhance an entirely different branch of government's ability to respond to a request for assistance from a foreign tribunal.

do here, would contravene the clear authority of Phibbs. The Court is cognizant of the fact that Phibbs indicates a shift in the judiciary's construction of the executive's criminal investigative capabilities. However, Phibbs is the law of this Circuit, and there is no sufficiently principled basis upon which to distinguish it from this case. If the Sixth Circuit meant what it clearly said in Phibbs, then, simply put, broad criminal subpoena powers may be "used to discover evidence related to the charges in the original indictment." Phibbs, 999 F.2d at 1077. Therefore, the Court finds that § 3486 authorizes the government to obtain evidence related to charges in a pending indictment.

Given the Court's finding as to its first inquiry as set forth above, the Court need not proceed to the second inquiry - whether the government did indeed issue the § 3486 subpoenas for the sole purpose of trial preparation. The Court has determined that the government is authorized to do so. Thus, in order to finally adjudicate the validity of the administrative subpoenas at issue in this case, the Court must determine whether the government has "satisfied the statutory prerequisites to issuing and enforcing the subpoena, and 2) determine whether the [government] has satisfied the judicially created standards for enforcing administrative subpoenas." Doe, 253 F.3d at 262. The Sixth Circuit has formulated a four-part test to address both components of this inquiry. This Court will uphold an administrative subpoena if

> 1) it satisfies the terms of its authorizing statute, 2) the documents requested were relevant to the DOJ's investigation, 3) the information sought is not already

in the DOJ's possession, and 4) enforcing the subpoena will not constitute an abuse of the court's process.

Id. at 265 (citing United States v. Markwood, 48 F.3d 969, 980 (6th Cir. 1995)).

The government, in issuing its subpoenas, was clearly concerned with health care fraud.  Moreover, the Court has reviewed the subpoenas reproduced in the government's *in camera* submission to the Magistrate and is satisfied that the subpoenas adequately describe the documents to be produced pursuant to § 3486.  Thus, the subpoenas satisfy the express terms of § 3486.  Regarding the relevance of the requested documents to the government's investigation, as noted above, § 3486 grants the government "broad subpoena power," id., including the authority to subpoena evidence related to charges in a pending indictment.  The Court is instructed to afford the agency's determination of relevance considerable deference, construe the relevance of its requests broadly, and weigh the "likely relevance of documents against the burden of their production."  Id. at 266-68.  The Court has reviewed the government's subpoenas of hospital peer-review records and, exercising due deference, considers them sufficiently relevant to the government's investigation of the allegations of health care fraud at issue in both the original and superseding indictments. Furthermore, the Court is unaware of any subpoena recipient's substantial burden in producing the subject records.  Because § 3486 entrusts the government with broad subpoena powers to both conduct an ongoing investigation into possible additional charges post-indictment or to "discover evidence related to the charges in

23

the original indictment," <u>Phibbs</u>, 999 F.2d at 1077, and because there was no apparent substantial burden in producing the requested documents, the Court finds that the § 3486 subpoenas at issue here were relevant to the government's investigation.  The Court is also satisfied that the information sought by the § 3486 subpoenas was not already within the government's possession.  Finally, there is no abuse of the Court's process in upholding the validity of the subpoenas because they were issued in good faith and effect no form of harassment on either their recipients or Defendant.  <u>Doe</u>, 253 F.3d at 271-72 (<u>quoting</u> <u>United States v. Powell</u>, 379 U.S. 48, 58 (1964)).  Defendant's overarching concern that the government has issued the subpoenas in order to secretly prepare trial strategy and/or equip itself with the means to use Defendant's statements to the peer-review committees against him at trial simply does not amount to a demonstration that upholding the validity of the subpoenas is an abuse of the Court's process given that, as the Court has already concluded, § 3486 effects a broad grant of subpoena power, which, under the authority of <u>Phibbs</u>, must include allowing the government to use health care subpoenas to obtain evidence related to charges in a pending indictment.

Accordingly, for the reasons stated above, the Court DENIES Defendant's Motion to Suppress on the grounds of alleged of statutory excess.

### b.  Requirement of a Probable Cause Showing

Defendant also contends that the government was required to make an advance showing of probable cause before the judiciary

prior to issuing its subpoenas.  Defendant's Reply, doc. no. 185 at 8-10.  As discussed above, Defendant lacks standing to challenge the subpoenas under the Fourth Amendment.  Furthermore, Defendant's claim is without merit.  Defendant relies on portions of <u>Phibbs</u> which postulate that, "[s]hould an on-premises search and inspection be required to execute the [§ 876] subpoena, a valid search warrant is needed."  <u>Phibbs</u>, 999 F.2d at 1077.  The Sixth Circuit's discussion of the requirement for an advance showing of probable cause is clearly limited to situations where an "on-premises search and inspection" is required to execute an administrative subpoena, and is not applicable where the government has merely issued the subpoena without the need for an accompanying search or inspection.  <u>Doe</u>, 253 F.3d at 264 (explaining that probable cause discussion in <u>Phibbs</u> was in context of "addressing administrative searches, as opposed to administrative subpoenas").  Defendant does not contend that the government actually performed some on-premises search in order to execute its subpoenas.  Thus, Defendant's probable cause argument is DENIED.

**c.  Use of § 3486 Subpoenas Violates Discovery Rules**

Defendant's arguments in this regard appear to be either identical to or subsumed within the "statutory excess" arguments addressed by the Magistrate in her Report and Recommendation.  In short, Defendant asserts that the Supreme Court's opinion in <u>LaSalle</u> precludes the government from using § 3486 subpoenas to obtain evidence for a criminal prosecution because to do so impermissibly broadens the government's discovery capabilities

25

beyond Rules 16 and 17 of the Federal Rules of Criminal Procedure. The Court has fully addressed this argument <u>supra</u>, pgs. 15-24, and need not once again set forth its analysis. Accordingly, Defendant's argument that the government has violated criminal discovery rules is DENIED.

### d. Rights Under the Fifth and Sixth Amendments

Defendant summarily asserts that "approving the government's post-indictment use of DOJ investigative subpoenas to gather trial evidence would violate the defendant's due process and fair trial rights under the Fifth and Sixth Amendments." Defendant's Reply, doc. no. 185 at 11. Defendant's conclusory assertion is not supported by citation to any authority, nor is the Court aware of any precedent establishing that the government's valid exercise of its statutorily granted subpoena powers somehow violates the Constitution. Moreover, it is apparent from <u>Phibbs</u> that the Sixth Circuit was not concerned that the government's use of administrative subpoenas to "discover evidence related to the charges in the original indictment" somehow entailed any such constitutional violation. <u>Phibbs</u>, 999 F.2d at 1077. Accordingly, Defendant's Fifth and Sixth Amendment claims are DENIED.

### D. CONCLUSION

For all of the reasons stated above, the Court ADOPTS the Magistrate's Recommendation as to Defendant's standing to challenge the government's use of health care subpoenas as excessive of its statutory authority. However, the Court REJECTS the Magistrate's conclusion that the government exceeded its statutory authority in

issuing the subpoenas at issue in this motion.  Accordingly, the Court DENIES Defendant's Motion To Suppress All Records Illegally Subpoenaed Post-Indictment From Hospitals.

## II.  MOTION TO SUPPRESS ALL RECORDS

### A.  Background

Defendant's second motion seeks suppression of all records obtained, whether before or after indictment, pursuant to § 3486. Defendant contends that § 3486 violates his purported right to be investigated exclusively by the grand jury pursuant to the Fifth Amendment's Presentment and Indictment Clause.  Defendant also originally argued that all records obtained should be suppressed because the government "failed to conform to the Fourth Amendment's probable cause requirements" in utilizing the § 3486 subpoenas. Defendant's Motion, doc. no. 202 at 1.  However, Defendant apparently abandoned his probable cause argument prior to the Magistrate's Report.  <u>See</u> Defendant's Notice of Additional Authority, doc. no. 248.  The government opposes Defendant's Motion.

The matter was referred to the Magistrate for a Report and Recommendation.  The Magistrate issued her Report on July 29, 2005, concluding that § 3486 is unconstitutional and that Defendant's motion should be granted.  The government has objected to the Magistrate's Report and Defendant has responded to those objections.

### B.  The Magistrate Judge's Report and Recommendation

27

The Magistrate first determined, replicating the Fourth Amendment analysis above, that Defendant has standing to challenge issuance of the administrative subpoenas to third-parties. The Magistrate offered no apparent discussion of Defendant's standing to challenge all health care subpoenas under the Fifth Amendment.

Proceeding to address the constitutionality of § 3486, the Magistrate framed the issue as follows:

> Lazar contends that because DOJ subpoenas are to be used only in criminal investigations, their use by the prosecution to obtain over 20,000 documents **post-indictment** intrudes on the exclusive province of the grand jury under the Fifth Amendment, thus making § 3486 unconstitutional.
> . . .
> Lazar's main contention is that § 3486 is unconstitutional because it allows the government to exercise authority constitutionally reserved for the Grand Jury under the Fifth Amendment. By availing itself **post-indictment** of the DOJ administrative subpoenas to secure evidence in a criminal prosecution, Lazar claims that the government is circumventing the role of the Grand Jury. Lazar maintains that by allowing the DOJ to compel the production of criminal evidence **post-indictment** through the use of an administrative subpoena, Congress has interfered with the Grand Jury's power to investigate.

Report and Recommendation, doc. no. 359 at 7, 9-10 (emphasis added).[5]

_____

[5] A subsequent motion by Defendant seeks "clarification" of the Magistrate's Report and specifically raises the passage quoted above. Defendant no doubt seeks such clarification because subtleties in the Magistrate's diction perhaps indicate either a misapprehension of the scope of Defendant's claims or a conflation of the suppression claims of Defendant's two separate motions. As recited in the motion, Defendant challenges the constitutionality of § 3486, thus implicating subpoenas issued both before and after indictment. Furthermore, the Magistrate's summary recounts that Defendant is concerned that the government is using § 3486 subpoenas post-indictment to "secure evidence in a criminal prosecution," thus "circumventing the role of the Grand Jury." Of course, the grand jury has no role in securing trial evidence after an indictment, see United States v. George, 444 F.2d 310, 314 (6th Cir. 1971), and the government does not, so far as the Court can discern, contend such in this case. Rather, Defendant
(continued...)

In her substantive analysis, the Magistrate conceded that Defendant's claim was an issue of first impression and ultimately relied on the *dicta* cited by Defendant from three cases dealing with I.R.S. summonses issued pursuant to the Internal Revenue Code. See Report and Recommendation, doc. no. 359 at 10-15 (discussing LaSalle, <u>United States v. Weingarden</u>, 473 F.2d 454 (6th Cir. 1973), and <u>United States v. O'Connor</u>, 118 F.Supp. 248 (D. Mass. 1953)). <u>LaSalle</u> is discussed in relevant aspects above, <u>supra</u> pgs. 15-17. <u>Weingarden</u> and <u>O'Connor</u> are notable because in each case the distinguished jurist authoring the opinion opted to expound, clearly in *dicta*, on perceived general constitutional limitations on prosecutorial subpoena powers. The Court will further address these cases below. In short, the Magistrate culled from the cited cases a policy, supposedly enshrined in the Constitution, that "broad investigatory powers were not intended by the framers of our Constitution to be in the hands of prosecutors, but rather, these powers were given exclusively to the Grand Jury." Report and Recommendation, doc. no. 359 at 17. Because, the Magistrate found, "[a]s written, the statute allows the DOJ to continue to use its healthcare summons authority to aid in its prosecution of an already indicted defendant under the guise of 'investigating' new charges," the statute unconstitutionally encroaches upon the

---

[5]   (...continued)
is concerned that § 3486 endows the prosecutorial arm of the government with the power to subpoena evidence in a criminal investigation, a power that has never been extended to federal prosecutors and has traditionally been reserved for the grand jury and, more recently, administrative agencies charged with broad civil, administrative, and criminal investigatory functions.

"exclusive investigatory right of the Grand Jury." <u>Id.</u> at 17-18. Accordingly, the Magistrate recommended that Defendant's motion to suppress all records obtained by virtue of § 3486 be granted.

### C. Analysis

#### 1. Standing

The government devotes little effort to challenging whether Defendant has standing to seek suppression of the records under the Fifth Amendment. To the extent the government contends that Defendant lacks standing, the government largely replicates its analysis of standing under the Fourth Amendment. <u>See</u> United States' Objections, doc. no. 378 at 22-27. However, as Defendant points out, Defendant has alleged a violation of his personal rights under the Fifth Amendment. In essence, Defendant has claimed that the Fifth Amendment requires that he be investigated exclusively by the grand jury. If the Fifth Amendment indeed guarantees such, then surely Defendant enjoys standing to assert a violation of that personal right. Thus, the Court finds no basis to deny Defendant standing for his Fifth Amendment challenge.

#### 2. Substantive Claim

Defendant contends that the government has relied upon an unconstitutional grant of subpoena authority to obtain voluminous records in its pre and post-indictment investigation of Defendant. Defendant submits that § 3486 vests the government's prosecutor of crime with investigatory authority that, consonant with the Constitution, can be wielded only by the grand jury. Accordingly,

Defendant seeks to have all records obtained pursuant to § 3486 suppressed.

The Fifth Amendment to the Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." Neither the Fifth Amendment nor any other constitutional provision bears a textual commitment of investigative powers to the grand jury. See, e.g., United States v. Medic House, Inc., 736 F.Supp 1531, 1537 (W.D. Mo. 1989)("Petitioner correctly notes that, while indictment by a grand jury is guaranteed by the fifth amendment [sic], there is no guarantee that investigation would be only by a grand jury."). However, the Amendment's guarantee "presupposes an investigative body" that is independent of prosecutors and the judiciary. United States v. Dionisio, 410 U.S. 1, 17 (1973). Thus, in fulfilling its duty to return "well-founded" indictments, the grand jury has historically enjoyed subpoena powers greater than police and prosecutors. See generally 1 Sara Sun Beale, Grand Jury Law and Practice § 1.7. The dual investigating and indicting purposes of the grand jury are commonly expressed in frequent references to the grand jury's role as both a "shield" from capricious government accusation and a "sword" of independent, if channeled, investigation. Thus, it is well-established that, though its investigative duties are not express in the Constitution, such powers certainly flow from the Constitution's grant of exclusive authority to return indictments. The question posed by the instant motion, however, is whether the

31

mere fact that the Fifth Amendment guarantee "presupposes" an investigative body necessarily entails that only the grand jury may conduct such investigations.

In contending that the Fifth Amendment limits the investigative authority manifested in § 3486 exclusively to the grand jury, Defendant relies on various cases dealing with the purportedly analogous investigative powers granted to the I.R.S. by previous versions of the Internal Revenue Code. Defendant maintains that the Sixth Circuit, in *dicta*, has recognized the viability of his claim. In U.S. v. Weingarden, the Sixth Circuit explained that once prosecutors are involved in a tax code prosecution, it would be improper for them to prevail upon the I.R.S. to use its statutory administrative summons authority to help the government strengthen its criminal case "simply because the subpoena power was given to the Internal Revenue Service and not to the Department of Justice." Weingarden, 473 F.2d at 459. The Sixth Circuit then surmised, in a footnote devoid of citation to relevant authority, that

> The reason that broad subpoena powers were given to the administrative agency and not to the prosecutorial department lies in our Grand Jury system. Broad investigatory, inquisitory and subpoena powers were given to that body of citizens drawn from the community; like powers were not intended to be in the hands of prosecutors of crime.

Id. at n.9. Defendant also relies on similar language from the fountainhead of his Fifth Amendment argument, Judge Wyzanski's

32

opinion in <u>U.S. v. O'Connor</u>.[6]  Judge Wyzanski refused to enforce an
I.R.S. summons because it was purportedly aimed only at advancing
a pending criminal case.  Judge Wyzanski believed that only the
grand jury was empowered to compel such disclosure:

> So far as this Court knows, Congress has never in
> criminal matters vested the executive with an
> unrestricted subpoena power to uncover information which
> might aid in the enforcement of criminal statutes and the
> preparation of criminal cases. . . .  The Constitution
> of the United States, the statutes, the traditions of our
> law, the deep rooted preferences of our people speak
> clearly.  They recognize the primary and nearly exclusive
> role of the Grand Jury as the agency of compulsory
> disclosure.  That is the inquisitorial body provided by
> our fundamental law to subpoena documents required in
> advance of a criminal trial, and in preparation of an
> indictment or its particularization.

<u>O'Connor</u>, 118 F.Supp. at 250-51 (citations omitted).

As Defendant expends great effort in relating to the Court,
<u>see</u> Defendant's Response, doc. no. 385 at 10-11, the writings of
Judge Wyzanski have enjoyed a particular esteem at the Supreme
Court and Courts of Appeals.  However, the pedigree of Judge
Wyzanski has not spared his musings on this subject a small measure
of justified criticism based on the practical realities of grand
jury practice.  In <u>U.S. v. Friedman</u>, the Third Circuit remarked
that "[n]o court has given a thorough or persuasive justification"
for Judge Wyzanski's construction of the tax code in <u>O'Connor</u>.  532
F.2d at 933 n.9.  Rather, Judge Wyzanski's holding, and perhaps the
*dicta* he offers in support, has simply been "assumed, rather than

---

[6]      As noted by the Third Circuit in <u>U.S. v. Friedman</u>, 532 F.2d 928, 933
n.9 (3d Cir. 1976), the construction of the I.R.S.'s statutory summons authority
limiting that authority to pre-referral civil investigations "appears to have
originated" with Judge Wyzanski's opinion in <u>O'Connor</u>.

explained" at least until Congress amended the Internal Revenue Code in pertinent part.  Id.  The Third Circuit suggested that, while Judge Wyzanski's rumination on the essential purpose of the grand jury "has a nice ring," his eloquence belies "the reality that grand jury subpoenas are issued as a matter of course by the Department of Justice, not by the grand jury." Id.[7] Thus, despite Judge Wyzanski's lofty veneration of the grand jury's role in the federal criminal justice system,[8] courts have noted that the theoretical distinctions and divisions he draws between that body and "the executive" are, and have been for a considerable time, largely superficial in light of real-world application. See also Dresser, 628 F.2d at 1383-84 (explaining that concerns of preserving the independence of the grand jury ignore the practical reality of prosecutorial and administrative official assistance and guidance to the grand jury). Furthermore, *dicta* in Weingarden and O'Connor notwithstanding, at least one circuit court has specifically rejected a defendant's contention that the I.R.S.'s summons authority amounts to a violation of the Fifth Amendment's Presentment or Indictment clause:

---

[7]     Counsel for Defendant acknowledged this reality of grand jury practice at the hearing on this motion: "Now, I understand the government issues the subpoenas for the grand jury.  There's no secrets here.  We all know how it works."  Transcript, doc. no. 351 at 43.

[8]     The Court notes that, if state criminal justice systems are any barometer of "the traditions of our law [and] the deep rooted preferences of our people," the grand jury is perhaps not quite as fundamentally rooted in our concept of justice as Judge Wyzanski's flowery prose would suggest.  See generally 1 Sara Sun Beale, Grand Jury Law and Practice § 1:5 (recounting history, dating to the middle of the nineteenth century, of individual states' regression from the notion of requiring grand juries as indicting and/or investigating bodies).

Taxpayer also contends that §§ 7602(b) violates the fifth amendment's [sic] guarantee of prosecution upon indictment by grand jury. According to taxpayer, §§ 7602(b) grants special agents overly broad investigative powers which seriously intrude upon the role of the grand jury as the principal tool of a criminal discovery and prosecution. Accordingly, taxpayer argues that by vesting revenue agents with the power to summons, free of restraint, any material in connection with the investigation of a criminal offense under the tax laws, Congress has impermissibly constituted these employees of the executive branch as "'one person grand juries'" in violation of the fifth amendment [sic] guarantee of prosecution upon indictment by grand jury.

United States v. Morgan, 761 F.2d 1009, 1012 (4th Cir. 1985). The Fourth Circuit rejected the taxpayer's contention because the I.R.S.'s summons power is demonstrably more narrow than that of the grand jury, does nothing to minimize the grand jury's own summons powers, and is not self-enforcing. Id. While Morgan finds no Fifth Amendment violation in Congress's grant of general statutory subpoena authority in potential criminal investigations to a particular executive agency and Defendant's motion is concerned with the extension of such powers to government prosecutors, the fundamental issue common to both is whether or not Congress has encroached on some constitutionally recognized commitment of exclusive investigative authority to the grand jury. Neither Weingarden nor O'Connor standing alone, and in light of the realities of grand jury practice and case law to the contrary, require such a finding in this matter.

The root of Defendant's concern appears to be the efforts of Congress to accommodate law with enforcement aptitude in America's burgeoning administrative state. Thus, an understanding of the context in which § 3486 came about will lend perspective on the

35

discrete constitutional claim raised by Defendant.  Congress has
set about expanding the investigative powers of executive agencies
and - for the first time with § 3486 - government prosecutors in
recognition of the fact that ever increasing aspects of society are
subject to complex regulation.  Given the increasing interrelation
of the civil, administrative, and criminal spheres of law, the
exclusivity of the grand jury's traditional role as a criminal
investigative entity has been subject to gradual but inevitable
erosion.  Commentators recognized this trend percolating in the
courts even before § 3486 extended investigative subpoena powers to
prosecutors:

> This new generation of cases reveals an important, if
> quiet and little-noticed, institutional development in
> the practice of federal criminal law: the grand jury has
> lost a good deal of its importance in modern federal law
> enforcement in areas involving regulated activities.  The
> center of activity has shifted to regulatory agencies.
> This natural shift reveals no obvious impropriety.
>     . . .
> This development has rendered the separation between
> civil and criminal compulsory process more and more
> artificial, a phenomenon that courts have recognized by
> largely abandoning the traditional notion that criminal
> investigations are the sole prerogative of the grand
> jury.  Little appears to be left of the old incantation
> that pursuit of a criminal violation through civil
> process would be an illegitimate usurpation of the role
> of the grand jury.  If the governing statute clearly
> bestows on a regulatory agency or the investigative arm
> of government the power to investigate criminal
> violations, the statute will prevail, since courts have
> rightly acknowledged that no constitutional right is
> endangered.

Graham Hughes, *Administrative Subpoenas and the Grand Jury:
Converging Streams of Criminal and Civil Compulsory Process*, 47
Vand. L. Rev. 573, 609-613 (1994).  Thus, while there is no
inherent Fifth Amendment violation in allowing executive agencies

36

to conduct criminal investigations with broad civil and/or administrative statutory subpoena powers, the issue in the instant motion is whether Congress can, consonant with the Fifth Amendment, proceed with the next logical step of extending such authority to prosecutors charged with conducting exclusively criminal investigations.

With § 3486 Congress has granted prosecutors the authority to subpoena records in any investigation of a criminal health care offense.  Section 3486, therefore, is definitively unique in that it "marked the first time that Congress granted this broad investigative subpoena power solely for criminal law enforcement purposes."  Risa Berkower, Note, *Sliding Down A Slippery Slope? The Future Use Of Administrative Subpoenas In Criminal Investigations*, 73 Fordham L. Rev. 2251, 2265 (2005).  <u>See also</u> Sara Sun Beale, Grand Jury Law and Practice § 6.3.1 ("Although the general rule is that federal prosecutors possess no independent subpoena power, Congress has enacted a statute creating such power as to investigations relating to federal health care offenses . . . .").  Indeed, the enactment of § 3486 partly fills the void articulated by Judge Wyzanski in surmising some fundamental and historical prohibition on "the executive['s]" exercise of criminal investigative subpoena authority.  <u>See</u> <u>O'Connor</u>, 118 F.Supp. at 250("So far as this Court knows, Congress has never in criminal matters vested the executive with an unrestricted subpoena power to uncover information which might aid in the enforcement of criminal statutes and the preparation of criminal cases.").  However,

37

Congress's act, by mere force of its innovation, is not necessarily unconstitutional.   That is, accepting, as <u>Morgan</u> holds and Defendant appears to concede,[9] that the Fifth Amendment is not violated when an executive agency employs a civil and/or administrative subpoena authority to conduct a criminal investigation, the Court is hard pressed to discern how the Fifth Amendment suffers greater harm when government prosecutors exercise a similar subpoena authority, pursuant to a statute concerned only with criminal enforcement, in conducting a criminal investigation. Defendant's reasoning is specious at best if he would uphold some administrative subpoenas based on their potential civil or administrative uses, while allowing that they may be used by the relative executive agency for the express purpose to which he objects in the § 3486 context.   It is also a flimsy distinction to impugn § 3486 because it vests its subpoena authority with prosecutors rather than some administrative agency.   In many respects, agency officials and prosecutors have become so entwined in federal criminal law enforcement that agencies sometimes act as *de facto* prosecutors, if not outright prosecutorial delegatees, before the grand jury:

> Specialized and experienced agency staffs can best evaluate the gravity of violations and develop an investigation.  Because these investigations frequently, perhaps mostly, involve conduct that may be criminal and

---

[9]     <u>See</u> Defendant's Response, doc. no. 385 at 16 (proposing that the executive's use of civil and/or administrative subpoena authority pursuant to other statutes somehow validly serves some regulatory delegation from Congress, even if the subpoena is issued in furtherance of a criminal investigation, merely because the issuing agency retains civil and/or administrative functions in addition to its criminal investigative duties).

that sometimes will result in a criminal prosecution, agency staffs also develop a good deal of expertise in the preparation of a criminal case.    Even more importantly, an agency staff often will make the decisive evaluation as to whether violations are serious enough to warrant prosecution.  The United States Attorney's Office and the Department of Justice rarely will overrule this conclusion and press for a criminal proceeding.

Thus, in a substantial proportion of federal crimes, agencies make critical decisions as to whether to prosecute and participate to a great extent in the preparation of criminal cases.    Upon instituting a prosecution, the product of the investigation must be handed over for presentation to the grand jury.  Even at this stage, agency attorneys and experts likely will assist the prosecutor in his presentation and testify before the grand jury.  Agency attorneys may, indeed, present the case to the grand jury since the Attorney General has statutory authority to designate agency attorneys to assist in conducting proceedings before the grand jury.

Hughes, 47 Vand. L. Rev. at 610-11.  Thus, it blinks reality to suggest, as Defendant does, that the Fifth Amendment guarantee is somehow less abridged when an agency issues a criminal investigatory subpoena, pursuant to a broad statutory grant of civil/administrative/criminal authority, in a narrowly criminal investigation than when prosecutors issue a similar subpoena in a criminal matter pursuant to its exclusively criminal investigatory function.

In sum, the Court concedes that § 3486 represents a departure from traditional notions of the limits on the prosecution's investigative powers.  However, the consequential diminution of the government's reliance on the grand jury's traditional, though non-textual, investigative capabilities only continues the prevailing trend away from the formerly paramount role of the grand jury in

criminal investigations. Counsel for Defendant encapsulated his concerns as follows:

> What we're suggesting, Your Honor, is what the DOJ subpoena effectively does is turn the grand jury into very little more than a body that votes yea or nay on some evidence presented by the government.
> . . .
> [T]his is fundamentally about are we going to be a system that relies on a grand jury or are we going to be a system that - a federal system that essentially turns unfettered discretion, other than the up or down vote, over to the prosecution.

Transcript, doc. no. 351 at 42, 44. The Court first notes that, textually, the Constitution's only grant of power to the grand jury is the "yea or nay" or "up or down" vote of whether to indict. U.S. Const., amend. V. Furthermore, expanding the criminal investigative powers of the executive does not necessarily remove those powers from the grand jury. In other words, circumvention of the grand jury's investigative powers does not necessarily equate with arrogation. Rather, the grand jury continues to enjoy the broadest subpoena powers known in federal law enforcement. Indeed the greater scope of the grand jury's subpoena authority will often make proceeding through that body advantageous in continuing or supplementing an investigation initiated by § 3486 subpoenas. Section 3486 has simply, in light of certain limitations and secrecy provisions related to grand jury testimony, allowed the government to obtain limited types of information in certain narrowly defined cases without the requirement of going through the grand jury. Though this development does not comport with traditional notions of the exclusivity of the grand jury's investigate function, it is a logical progression in the

development of the criminal law and presents no apparent conflict with the text of the Constitution.  Regardless of § 3486, the grand jury retains all of its traditional investigative abilities and its constitutionally reserved exclusive function to return indictments.

Section 3486, like other acts of Congress, enjoys a "presumption of constitutionality." United States v. Morrison, 529 U.S. 598, 607 (2000).  That presumption forbids the Court from invalidating a congressional enactment except "upon a plain showing that Congress has exceeded its constitutional bounds." Id.  The Court finds that Defendant has not made such a plain showing in this case.  Defendant cites to *dicta* from a handful of cases which, though admirable for their reverence of the grand jury as a historical institution, reflect neither the practical realities of grand jury practice nor the current state of the law.  As set forth above, Congress, in a logical progression of that body's gradual expansion of executive criminal investigatory authority, has created an expedient measure to more effectively investigate certain narrowly defined crimes.[10]  Congress has not diluted the grand jury's powers of investigation or otherwise abrogated its investigative authority.  Nor has Congress even arguably intruded upon the one function that the Constitution textually ascribes to the grand jury:  the exclusive power to return an indictment.

---

[10]    It bears noting that Congress, mindful of the unique authority granted in § 3486, and its concomitant expansion of prosecutorial authority, has not extended similar subpoena authority to prosecutors in any domain beyond § 3486, including those that might fit under the rubric of "national security," despite debate favoring such expansion.  See generally Risa Berkower, Note, *Sliding Down A Slippery Slope?  The Future Use Of Administrative Subpoenas In Criminal Investigations*, 73 Fordham L. Rev. 2251, 2265 (2005)

However broad the executive's criminal investigative authority, it must still lay its cards before the grand jury in order to obtain an indictment in health care cases.  And, of course, § 3486 in no way affects the grand jury's exercise of its independent judgment on whether to reject the prosecution's subpoenaed evidence, accept it, assign it any level of significance, or conduct any further investigation of its own prior to returning an indictment. Accordingly, the Court concludes that § 3486 does not violate the Presentment and Indictments clause of the Fifth Amendment.

### D. Conclusion

The Court REJECTS the Magistrate's Recommendation (doc. no. 359) to grant Defendant's Motion to Suppress and Exclude All Records Subpoenaed Pursuant to DOJ Healthcare Subpoenas (doc. no. 202).  Because the Court finds that § 3486 does not violate the Fifth Amendment's guarantee of Presentment or Indictment by the grand jury, Defendant's Motion is DENIED.

### III.  CONCLUSION

The Court ADOPTS-IN-PART and REJECTS-IN-PART the Magistrate's Report and Recommendation (doc. no. 360).  Defendant's Motion to Suppress All Records Illegally Subpoenaed Post-Indictment From Hospitals (doc. no. 76) is DENIED.

The Court REJECTS the Magistrate's Report and Recommendation (doc. no. 359).  Defendant's Motion to Suppress and Exclude All Records Subpoenaed Pursuant to DOJ Healthcare Subpoenas (doc. no. 202) is DENIED.

IT IS SO ORDERED this 20th day of December, 2006.

                     s/Bernice B. Donald
                     BERNICE BOUIE DONALD
                     UNITED STATES DISTRICT JUDGE